**Kenneth A. HINTON, Plaintiff,**

v.

**Cheryl D. STEIN, Defendant.**

**No. CIV.A.00–2566 RBW.**

United States District Court,
District of Columbia.

Aug. 19, 2003.

Kenneth Adolphus Hinton, Rivers Correctional Institution, Winton, NC, for plaintiff.

Cheryl D. Stein, Washington, DC, for defendant.

## MEMORANDUM OPINION

WALTON, District Judge.

Plaintiff filed the complaint in this case *pro se*, alleging that defendant committed legal malpractice in connection with her representation of him in a criminal case. Following discovery, defendant filed a motion for summary judgment, which plaintiff has opposed. Also before the Court is plaintiff's motion for sanctions. After consideration of the parties' submissions, including the supporting declarations, and the applicable legal authority, the Court will grant summary judgment for the defendant. Plaintiff's motion for sanctions will be denied.

## I. Background

Plaintiff alleges that on or about November 18, 1999, he retained defendant, an attorney, to represent him in a criminal case that had been filed in this Court, *United States v. Kenneth A. Hinton,* Criminal Number 99–211. Complaint, ¶ 5. Plaintiff asserts that he paid the defendant a retainer of $ 3,800.00 "for commencement of" his case. *Id.,* ¶ 6. Defendant purportedly "assured" plaintiff that she would attend a scheduled bond review hearing on November 22, 1999, and would file a motion for reinstatement of his bond. *Id.,* ¶¶ 7–8. Nevertheless, plaintiff alleges, defendant did not file the bond motion and did not appear at the hearing. *Id.,* ¶ 9. As a result, plaintiff asserts that he was forced "to rely on the ineffective legal counsel and services of a Federal Public Defender . . . ." *Id.,* ¶ 10. Plaintiff contends that he was "left with unexpected certainties of the disposition of [his] case" and suffered physically, emotionally, and socially, and lost his employment. *Id.,* ¶ 11.

Plaintiff further alleges that defendant failed to properly conduct "pre-trial investigations, witness interviews, legal research and discovery [in his] case," and failed to provide him documentary proof of her efforts to prepare for his trial. *Id.,* ¶ 12. Because of "defendant's deliberate indifference and lack of due diligence," plaintiff claims, he suffered further physi-

cal and mental anguish and now has "a wrongful conviction and illegal sentence ... for alleged offenses that [he] never committed." *Id.,* ¶ 13. For what he characterizes as a "breach of trust" and "gross negligence," plaintiff seeks $300,000. *Id.,* ¶¶ 14, 16.

Defendant's answer admits that she was retained to provide legal services to plaintiff in November 1999, that plaintiff appeared before Judge Urbina for a scheduled bond hearing on November 22, 1999, and that she did not argue plaintiff's case on that date. Defendant denies the remaining essential allegations of the complaint.

## II. The Parties' Submissions on the Motion for Summary Judgment

### A. Defendant's Motion

Defendant contends that there is no evidence that plaintiff suffered any injury because she failed to argue the bond motion and no evidence that plaintiff's conviction was the result of any alleged malpractice on her part. She points out that plaintiff has not proffered an expert witness on the legal standard of care applicable to legal malpractice claims in the District of Columbia or any medical expert witness to prove that he suffered physical or psychological injury from defendant's alleged malpractice. Defendant has not submitted any declarations in support of her motion but asks that the Court take judicial notice of the record in *United States v. Hinton,* as authorized by Rule 201(d) of the Federal Rules of Evidence. Plaintiff does not oppose this request, and the Court therefore will take judicial notice of those records.

The record in *United States v. Hinton* shows that on May 27, 1999, when plaintiff was first charged, an assistant Federal Public Defender was appointed to represent him and he was released on bond

after posting 20 percent of a $ 10,000 cash bond. Various motions were then filed by the public defender. On October 20, 1999, plaintiff's bond was revoked and a new bond in the amount of $ 20,000 cash was imposed as the condition for his release. *United States v. Hinton,* Dkt. # 24. On November 1, 1999, the public defender filed a motion for reconsideration of the revocation of his bond. This motion was denied at a hearing on November 5, 1999. Two weeks later, on November 19, 1999, a second motion for reconsideration was filed. At a hearing on November 22, 1999, while plaintiff was still being represented by his public defender, Judge Urbina granted the motion and reinstated plaintiff's original bond, resulting in his release. *United States v. Hinton,* Dkt. # 27. On the same date, defendant entered her appearance as counsel for plaintiff. Eleven days later, on December 3, 1999, defendant filed a motion to withdraw as counsel for plaintiff. *United States v. Hinton,* Dkt. # 30. The motion was granted on December 6, 1999, and on the same day Judge Urbina appointed another attorney to represent plaintiff. At plaintiff's trial, which began on March 17, 2000, this new attorney represented the plaintiff.

The record in *United States v. Hinton* further shows that defendant moved to withdraw because plaintiff had refused to sign a written retainer agreement. The Rules of Professional Conduct of the District of Columbia bar require that a lawyer who "has not regularly represented the client" shall communicate the basis of the fee to the client, "in writing, before or within a reasonable time after commencing the representation." Rule 1.5b. In her motion to withdraw, defendant stated that the "initial arrangements to retain counsel were made by [plaintiff's] wife while he was still incarcerated.... The understanding was that [plaintiff] would execute a

retainer agreement with counsel at his first opportunity." *United States v. Hinton*, Dkt. # 30. Defendant stated that she met with plaintiff on the morning of December 3, 1999, to prepare for a status conference on December 6, 1999, and to execute the retainer agreement. *Id.* "After an hour of conference" plaintiff told defendant that he had no present ability to pay her legal fee "and that, therefore, he refused to sign a retainer agreement." *Id.* Plaintiff told defendant he "intended to find *'pro bono' counsel." Id.* (emphasis in original). Defendant's motion to withdraw was granted on December 6, 1999; the new attorney was then appointed to represent plaintiff the same day. *United States v. Hinton*, Dkt.##28, 29.

Defendant argues that these facts are inadequate to establish the elements of legal malpractice. Defendant notes that plaintiff was released on bond the same day defendant entered her appearance, that defendant represented plaintiff for only two weeks at the beginning of the criminal proceedings, and that plaintiff was represented by other counsel during the three months between defendant's withdrawal of her appearance and the trial. Moreover, defendant asserts, plaintiff has not shown that he lost a valid defense as a result of the alleged malpractice.

### B. Plaintiff's Opposition

Plaintiff was advised by the Court of the requirements of Rule 56(e) of the Federal Rules of Civil Procedure and that factual assertions in the defendant's motion would be accepted as true unless he submitted his own affidavit or other documentary evidence contradicting the assertions. *Neal v. Kelly*, 963 F.2d 453 (D.C.Cir.1992), quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir.1982). In opposition to the motion, plaintiff submitted his affidavit reiterating the allegations of his complaint. Opposition, Exhibit 2. In addition, he states that defendant "failed to investigate the charges against" him, "failed to obtain information regarding witnesses and essential evidence," "failed to provide plaintiff an accounting of her time, expenses and actual work on plaintiff's case," and "failed to discuss with plaintiff his rights and options to challenge his charges." *Id.*, at 2. Plaintiff proffers one page of the docket in his criminal case, which reflects that defendant entered her appearance on the same day as the November 22 status conference. This has been proffered because plaintiff is presumably suggesting that this is evidence that defendant failed to properly represent him at the status conference. A portion of the transcript of the status hearing submitted by plaintiff shows that plaintiff was represented by the public defender, who advised the Court that defendant had been formally retained by plaintiff. To show that plaintiff was convicted in his criminal case he has proffered a copy of the Criminal Blotter showing that he was sentenced on June 26, 2000.[1]

---

1. Plaintiff also submitted a document that purports to be a declaration from a Steven Morello, with an address of One World Trade Center, 93d floor, dated February 25, 2001. The declarant states that he was plaintiff's "financial and legal consultant," that he was in court on November 22, 1999, that defendant was not present, and that at no time did defendant or an investigator working with her consult with him about plaintiff. The document further states that on or about December 5, 1999, Morello advised plaintiff to inform Judge Urbina that defendant "was not adequately and diligently representing him ... and that Ms. Stein had willfully and knowingly defrauded [plaintiff] of his monies that he paid to her." Further, the declarant states, without further detail, that plaintiff was "wrongfully convicted of alleged offenses that was a proximate result of Ms. Stein's legal malpractice ...."

## C. Defendant's Reply

In her reply, defendant argues that plaintiff has raised no material issues of fact and has not proffered any evidence to show that any damage he suffered was caused by any act or failure to act by her. Moreover, defendant asserts that plaintiff has presented no evidence demonstrating that he is entitled to any damages. Defendant attached a copy of plaintiff's response to her first set of interrogatories, signed by plaintiff on March 28, 2002, to demonstrate her position. Relevant to the motion for summary judgment are the following answers provided by plaintiff:

1) In response to the request to "[i]dentify all fact witnesses that you intend to call as witnesses at trial" and to "[s]pecify the subject matter upon which each such witness will give testimony," plaintiff named Judge Urbina, Valencia Rainey, the Assistant United States Attorney who prosecuted him, Shawn Allen, and Dawn Hinton (presumably plaintiff's wife) to testify that defendant did not represent him at the bond hearing.

2) Plaintiff could not identify any expert witnesses whom he plans to call at trial but "will submit declarations regarding" defendant's request for the identity of such witnesses.

3) Plaintiff did identify three doctors who treated him for illness or injury he allegedly suffered as a result of defendant's representation, but did not provide any supporting documentation regarding the testimony that each can present.

4) Plaintiff stated that without a copy of the transcript of the bond hearing, he could not "[d]escribe the outcome of the bond hearing ... before Judge Urbina on November 22, 1999."[2]

5) Plaintiff stated that without a copy of his medical records he could not describe the "inappropriate decisions" he claims the public defender made at the bond hearing that caused him to be "psychologically traumatized." Plaintiff had requested a copy of his records under the Freedom of Information/Privacy Act (5 U.S.C. §§ 552, 552a).

6) Plaintiff asserted that without a copy of defendant's records,[3] he could not describe the breach of trust by defendant that he contends "resulted in a gross negligence" of his due process rights.

7) Without reviewing defendant's records, plaintiff could not describe in detail the way in which defendant's "deliberate indifference and lack of due diligence" caused his allegedly

---

With her reply, defendant submitted evidence that Steven P. Morello, a "facilities manager" for the Marsh & McLennan Cos., Inc., was killed in the World Trade Center attack on September 11, 2001. Mr. Morello's death presents a problem because he would not be available were there to be a trial in this matter. Further, Mr. Morello's declaration offers nothing more than rank speculation and opinions that are unsupported by specific facts and his demonstrated expertise as a legal expert. His declaration therefore adds nothing to plaintiff's proof regarding the quality of defendant's legal representation.

**2.** Plaintiff apparently obtained a copy of the transcript after he responded to the interrogatories, because he submitted one page of the transcript with his opposition to the motion.

**3.** Defendant states that plaintiff never gave her any documents, that she destroyed the discovery that had been provided by the prosecutor after she learned that plaintiff had been convicted, and that the only other documents in her file were her work product. She states that plaintiff's trial attorney never contacted her and she assumed he obtained another copy of the discovery materials from the prosecutor. See Defendant's Response to Court Order of May 28, 2003, at 8, Dkt. # 58.

wrongful conviction. Plaintiff stated that he was awaiting the response under the Freedom of Information Act (5 U.S.C. § 552) from the United States Attorney's Office for "details regarding this request."

8) When asked to name all witnesses who testified on his behalf at his trial, plaintiff responded that the request was "unduly burdensome" and did not seek any discoverable information that was not part of the Court's records in his criminal case.

9) Finally, defendant asked plaintiff to "[e]xplain specifically how any acts or alleged derelictions by the defendant prevented [his trial attorney] from adequately investigating [his] case or representing [him] effectively at trial". Plaintiff declined to answer, describing the request as "unduly burdensome" and not requesting "any discoverable information or any information reasonably calculated to yield discoverable evidence."

## III. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P.Rule 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994).

In considering whether there is a triable issue of fact, the court must draw all reasonable inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *McKinney v. Dole*, 765 F.2d 1129, 1135 (D.C.Cir.1985); *see also Washington Post Co. v. United States Dep't of Health and Human Servs.*, 865 F.2d 320, 325 (D.C.Cir.1989). The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Moreover, the mere existence of a factual dispute by itself is not enough to bar summary judgment. The party opposing the motion must show that there is a genuine issue of *material* fact. *See Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. To be material, the fact must be capable of affecting the outcome of the litigation; to be genuine, the issue must be supported by admissible evidence sufficient for a reasonable trier-of-fact to find in favor of the nonmoving party. *See Anderson*, 477 U.S. at 248–50, 106 S.Ct. 2505; *Laningham v. United States Navy*, 813 F.2d 1236, 1242–43 (D.C.Cir.1987).[4]

## IV. Analysis

■ To establish a claim of legal malpractice, plaintiff must prove: "(1) that

---

4. Defendant, a lawyer, has not complied with the requirement of Local Civil Rule 7.1(h) that a motion for summary judgment should be accompanied by a statement of material facts that are not in dispute. The opponent, then, is to submit a statement "of genuine issues setting forth all material facts as to which it" contends there are genuine issues to be litigated. Plaintiff has not submitted such a statement either.

there was an attorney-client relationship; (2) that the attorney breached the applicable standard of care; and (3) that there was a legally cognizable harm." *Williams v. Callaghan,* 938 F.Supp. 46, 49 (D.D.C. 1996); *accord, Shapiro, Lifschitz & Schram, P.C. v. Hazard,* 97 F.Supp.2d 8, 12 (D.D.C.2000); *Smith v. Haden,* 872 F.Supp. 1040, 1044 (D.D.C.1994), *aff'd,* 69 F.3d 606 (D.C.Cir.1995). Defendant seeks summary judgment because, she argues, plaintiff cannot establish either that she breached the applicable standard of care or that he sustained any legally cognizable harm.

■ Plaintiff's opposition fails to demonstrate that there is any issue of material fact in dispute. It is conceded that defendant did not represent him at the bond hearing on November 22, 1999, and plaintiff has failed to present evidence showing that the defendant had an obligation to provide representation before the date of the hearing. Moreover, plaintiff has failed to show that he suffered any injury because of defendant's failure to represent him at the bond hearing. In any event, the motion for reconsideration was granted and he was reinstated on bond pending trial. Plaintiff does not dispute the fact that defendant represented him for only two weeks, and the court records show that he was continually represented by other counsel during all other times while his case was pending before the Court. Plaintiff does not point to any defense he lost by any alleged malfeasance on the part of defendant, which he would be required to show to prevail on the claim he alleges in paragraph 12 of the complaint. *See McCord v. Bailey,* 636 F.2d 606, 611 (D.C.Cir.1980), *cert. denied,* 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981); *Williams v. Callaghan, supra.*

Although there was a brief attorney-client relationship between the parties, defendant was justified in seeking to withdraw when plaintiff declined to execute a retainer agreement. Her motion to withdraw was filed promptly and there is no indication that plaintiff suffered any injury as a result of her withdrawal. As defendant points out, in a legal malpractice case the plaintiff generally must present expert testimony in order to prove breach of the applicable standard of care. *See Shapiro, Lifschitz & Schram, P.C. v. Hazard, supra.* The only exception is a case in which the lack of care is obvious, such as a lawyer's failure to file a complaint until the statute of limitations has elapsed. *See Williams v. Callaghan,* 938 F.Supp. at 50. Plaintiff has suggested no such situation in this case and because plaintiff has proffered no expert testimony that defendant breached an applicable standard of care, and does not identify any expert witness whom he might call at a trial, defendant has demonstrated that she is entitled to summary judgment.

## V. Plaintiff's Motion for Rule 11(c) Sanctions

In May 2003, plaintiff submitted a motion for sanctions based on defendant's alleged failure to provide him with answers to discovery requests he had made. He does not specify the requests to which he refers. With her response to an order issued by the Court on May 28, 2003, defendant submitted copies of a set of 25 interrogatories served by plaintiff on October 25, 2001; a set of 15 interrogatories served by plaintiff on December 6, 2001; defendant's answers to the set of 25 interrogatories which she sent to plaintiff on March 22, 2002; and defendant's response to plaintiff's request for production of documents, sent on March 22, 2002. Dkt. #58. Defendant certified that she mailed to plaintiff her response to the Court's

May 28 Order on June 19, 2003.[5] In his reply to this response, plaintiff does not argue that he did not receive the responses to his set of 25 interrogatories or his request for production of documents.[6]

As further grounds for his motion, plaintiff references defendant's statement to Bar Counsel that she was in the audience at the November 22, 1999, bond hearing, but not at counsel's table. This has been conceded, but it is not a basis for imposing sanctions against defendant. Moreover, because nothing in plaintiff's reply supports his motion for sanctions, the motion for sanctions will be denied.

An appropriate order accompanies this Memorandum Opinion.

### FINAL JUDGMENT

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the motion of defendant for summary judgment [Dkt. # 53–1] is **GRANTED**. It is

**FURTHER ORDERED** that plaintiff's motion for Civil Rule 11 sanctions [Dkt. # 52–1] is **DENIED**. It is

**FURTHER ORDERED** that the action is **DISMISSED** with prejudice. Any other pending motions are denied as moot. This is a final appealable order. See Fed. R.App. P. 4(a).

**SO ORDERED.**

---

**5.** The response was filed on June 18, 2003, Dkt. # 58.

**6.** The answers to interrogatories appear to be sufficiently detailed. Defendant states that she no longer has her file in plaintiff's case

and therefore could produce none of the requested documents. Defendant has, therefore, complied with the Court's order granting plaintiff's motion to compel defendant to respond to his discovery requests.